UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| LONE STAR CHAPTER PARALYZED ) <br> VETERANS OF AMERICA and ) <br> SKYEWARD BOUND RANCH, ) <br> ) <br> Plaintiffs, ) <br> ) <br> VS. ) <br> ) <br> CITY OF SAN ANTONIO and SAN ) <br> ANTONIO POLICE DEPARTMENT, ) <br> ) <br> Defendants. | Civil Action No.  SA-10-CA-316-XR |

ORDER ON APPLICATION FOR TRO

On this date, the Court considered Plaintiffs' Motion for Temporary Restraining Order (docket no. 5). A hearing was held on April 27, at which Plaintiffs and the City appeared, and evidence and arguments were presented. After careful consideration, the motion is denied.

I. Background

Plaintiffs are the Lone Star Chapter Paralyzed Veterans of America ("PVA") and Skyeward Bound Ranch ("SBR"). PVA is a congressionally chartered veterans service organization, and a 501(c)(19) organization that raises funds to benefit paralyzed veterans. SBR is a 501(c)(3) organization that collects money to support camping and recreational programs to benefit children with life threatening illnesses.

According to the Complaint, Plaintiffs "place leased donation centers in facility businesses" to raise money. These "donation centers" consist of one or more computer terminals accompanied by a sign providing information and pictures about the charity. Plaintiffs lease the computer equipment and software from Hest Technologies and World Touch Gaming, and place the computers ("donation centers") in businesses that sell alcoholic beverages. Plaintiffs allege that the donation centers reveal the predetermined result of a sweepstakes, and all entries in the sweepstakes are free. An individual may receive an entry by purchasing an alcoholic beverage, making a donation to the

charity, requesting one at the business facility, or requesting and receiving an entry by mail. Sweepstakes prizes are cash. Plaintiffs allege that the sweepstakes results may be revealed by the individual on a computer or through an "amusing display" that appears to be a game (but the game reveal feature has no effect on the predetermined sweepstakes outcome). Plaintiffs assert that because entries are free and the results are predetermined, the sweepstakes are legitimate and legal under Texas law.

**A. Texas law**

Under Texas law, coin-operated machines are subject to Chapter 2153 of the Texas Occupations Code, the purpose of which is "to provide comprehensive and uniform statewide regulation of music and skill or pleasure coin-operated machines." TEX. OCCUPATIONS CODE § 2153.001. Section 2153.003 defines "coin-operated machine" as "any kind of machine or device operated by or with a coin or other United States currency, metal slug, token, electronic card, or check, including a music or skill or pleasure coin-operated machine." Chapter 2153 includes licensing and registration requirements for persons who engage in the business of manufacturing, owning, buying, selling, renting, leasing, trading, lending, furnishing, maintaining, transporting, storing, or importing music and skill coin-operated machines, and imposes an occupation tax "on each coin-operated machine that an owner exhibits or displays, or permits to be exhibited or displayed in this state." TEX. OCCUPATIONS CODE §§ 2153.151, 2153.401. The Comptroller issues a tax permit to an owner who pays the tax, and the permit must be securely attached to the coin-operated machine for which it is issued. *Id.* § 2153.406. Section 2153.355, entitled "Criminal Offense; General Violations," provides that "[a] person commits an offense if the person: (1) exhibits or displays a coin-operated machine in this state for which outstanding tax is due . . . . (b) An offense under this section is a Class C misdemeanor."

The City of San Antonio has also passed Ordinance No. 76466 regulating the payment of city taxes on coin-operated machines.[1] The ordinance is enacted in the City Code of Ordinances, Part

---

[1] A municipal tax is authorized by Subchapter J of chapter 2153 of the Texas Occupations Code:

§ 2153.451. Imposition of Occupation Tax Authorized

(a) A county or municipality may impose an occupation tax on a coin-operated

II, Chapter 31 (Taxation), Article III (Coin Operated Machines). Section 31-40 requires that "every owner or operator who owns, controls, possesses, exhibits, displays, or who permits to be exhibited or displayed in this city any coin operated machine which are not exempt from payment by section 31-42 of this Code, shall pay the appropriate annual taxes as provided in Section 31-43." Under the Code, the term "coin operated machine" has the meaning given in "chapter eight, V.A.T.S., coin-operated services." Code § 31-41. Chapter 8 of the civil statutes has been repealed as part of the ongoing legislative revision process, and "coin-operated machines" are now governed by Chapter 2153 of the Texas Occupations Code, discussed above. The amount of tax due under the City Code "shall be an amount that does not exceed one-fourth (1/4) the amount of the state tax." Code § 31-43. Payment of the tax is verified by placement of a decal on each coin-operated machine prior to its placement, display, or use. Code § 31-44. The Code makes it "unlawful for any person to possess or exhibit within the city, any coin-operated amusement machine without having first properly attached thereto a valid current decal issued by the city tax assessor-collector, thereby verifying the payment of the tax thereon for the current coin-operated machine tax year of June 1 through May 31." Code § 31-46.

In addition, the Texas Penal Code makes it illegal for a person to play and bet for money or other thing of value at any game played with cards, dice, balls, or any other gambling device. TEX. PENAL CODE § 47.02(a)(3).

**B. Defendants' enforcement actions**

Plaintiffs allege that, on March 4, 2010, SAPD officers went to Plaza Del Rey Bingo Hall, confiscated PVA-leased charity donation centers,[2] and issued tickets to the business facility. The

---

machine in this state.
(b) The rate of the tax may not exceed one-fourth of the rate of the tax imposed under Section 2153.401.

[2] Plaintiffs state that no warrants for seizure pursuant to forfeiture proceedings were issued, just receipts for property. The property receipts show that $1,347 in U.S. currency, 32 computer terminals/monitors, 30 keyboards and mice, and 1 box of VFW cards were taken into custody as "evidence of gambling." Pl. ex. 8. Plaintiffs state that no forfeiture proceedings were initiated and Plaintiffs have not been ticketed or charged with a crime, though the Court heard evidence *in camera* that both Plaintiffs are being investigated in connection with the use of the donation centers.

tickets issued to the facility were issued for "no city tax stamp," "no city tax stamp computer 8 liner," and "no state tax stamp." Pl. Ex. 8. Tickets for gambling were issued to patrons who used the machines. Pl. Ex. 8. On February 24, 2010, SAPD allegedly "went to a private home where SBR charity donation centers had been moved by a private independent contractor, without the knowledge or acquiescence of SBR or Hest Technologies, Inc." The Police confiscated SBR-leased charity donation centers and issued no tax decal tickets to the business facility. Pl. Ex. 9 (tickets issued for "no city tax stamp," "no state tax stamp," and "no state tax stamp gambling machine"). On April 13 and 14, 2010, SAPD "went to several locations where SBR machines were previously located or were due to be installed and questioned the owners about the SBR sweepstakes. A Vice Unit Officer left a 'Notice of Illegal Gambling' with his name and badge number." The detective advised the business owners that, if they installed donation centers in their stores, they would be given a week to remove them or suffer the consequences of arrest, their clerks' arrests, confiscation of the donation centers, and shut down of their businesses. Plaintiffs allege that businesses are reluctant to place the donation centers because of the threat of enforcement of the tax and gambling statutes.

**C. Plaintiffs' claims**

Plaintiffs complain that Defendant City of San Antonio, through its agents, is "unconstitutionally enforcing and threatening to enforce Chapter 31, Article III, Sections 31-1 (adoption of State Tax Code[3]), 31-46 Display of decal[4] (City Tax Stamp), and 31-47[5] of the

---

[3] "The provisions of the Texas Tax Code as set forth in V.T.C.A., Tax Code, § 1.01 through § 211.259 is hereby adopted by the city as if set forth at length herein. Three (3) copies of the Tax Code shall be filed in the office of the city clerk."

[4] "It shall be unlawful for any person to possess or exhibit within the city, any coin-operated amusement machine without having first properly attached thereto a valid current decal issued by the city tax assessor-collector, thereby verifying the payment of the tax thereon for the current coin-operated machine tax year of June 1 through May 31. Decal shall be conspicuous and visible to the public, and attached in accordance with section 31-47."

[5] "Occupation tax decals shall be conspicuously attached to a permanent surface of the machine so as to make the decal visible for inspection without movement of machine. Decals not properly displayed will be invalid. Tax decals shall be securely and permanently attached to the coin-operated machine. It shall be unlawful to enclose any tax decal in a plastic cover or to in any

4

Municipal Code of San Antonio and Section 47.02 of the Texas Penal Code (gambling) in a manner that violates Plaintiffs' First and Fourteenth Amendment protected speech." Plaintiffs assert that these donation centers promote the sale of alcohol in businesses, and are regulated by the Texas Alcoholic Beverage Commission. Plaintiffs assert that the TABC has authorized the operation of the donation centers for each business in which they are installed, and has concluded that the sweepstakes and operation of the donation centers constitute a legitimate sweepstakes that does not constitute illegal gambling, and that San Antonio, as a home rule city, may not enact ordinances that "conflict with TABC statutes and regulations since these laws preempt the home rule city ordinances." Plaintiffs also allege that the Comptroller has verified that the donation center computers such as those used by Plaintiffs are not coin-operated machines subject to an occupation tax.[6]

Plaintiffs' Complaint asserts two causes of action. The first cause of action asserts that the criminal enforcement at issue is an unconstitutional restraint on speech and assembly, in violation of Plaintiffs' rights under the First and Fourteenth Amendments. Specifically, Plaintiffs claim that charitable solicitations are protected free speech, that Plaintiffs' "fully protected charity solicitation speech is chilled by the actual confiscation of donation center equipment, confiscation of money, and threatened arrests of business facility owners and their employees and the forced closure of their businesses." Plaintiffs allege that Defendants' actions have "halted the free speech and free assembly practices of the Plaintiffs." Plaintiffs "pray for an order . . . declaring that their charity

---

way affix the decal in a less than permanent manner so that the decal may be removed or moved from one machine to another without the destruction of the decal resulting as a consequence of such removal. The decal must be attached by use of the adhesive exposed on back following complete removal of the protective backing. Decals shall not be affixed by the use of tape. Any decal not affixed permanently to a machine as described in this section by use of the adhesive backing on the decal shall be immediately voided. Any decal removed from a machine shall be immediately voided. Occupation tax decals issued under the provisions of this article are not transferrable from one person to another or from one coin-operated machine to another."

[6] Plaintiff submit an April 21, 2009 letter from the Comptroller to Billy Boone that "confirm[s] that Texas E-Stores LLC VFW Sweepstakes is not subject to the licensing and registration requirements of the Coin-operated Machines Law." Pl. Hrg. Ex. 3. It states that "a card-activated computer is not a coin-operated amusement machine unless it has a game installed in its memory."

sweepstakes fund raising complies with Texas and federal law and is a valid exercise of their protected First and Fourteenth Amendment rights to free speech and assembly." In their second cause of action, Plaintiffs seek preliminary and permanent injunctive relief "enjoining the enforcement actions described above against Plaintiffs."

## II. Motion for Temporary Restraining Order

### A. Standards for TRO

This Court's discretion to grant a temporary restraining order must be exercised in light of the four prerequisites for preliminary injunctive relief: (1) a substantial likelihood that Plaintiffs will prevail on the merits, (2) a substantial threat that Plaintiffs will suffer irreparable injury if the injunction is not granted, (3) that the threatened injury to Plaintiffs outweighs the threatened harm the injunction may do to Defendant, and (4) that granting the preliminary injunction will not disserve the public interest. *Lindsay v. City of San Antonio*, 821 F.2d 1103, 1107 (5th Cir. 1987).

Plaintiffs assert that they meet the criteria because they are substantially likely to succeed on the merits. Plaintiffs contend that none of the provisions in the City Code or the Texas Penal Code prohibition on illegal gambling prohibit or limit the conduct of a sweepstakes for which no consideration is required, or the operation of amusing games to merely reveal the predetermined sweepstakes' entry result. Plaintiffs assert that, because all entries in the sweepstakes are free, the sweepstakes do not constitute illegal gambling under Texas or federal law. Plaintiffs further contend that they are threatened with irreparable injury as a matter of law because the threats of enforcement have a "chilling effect on Plaintiffs and the facility businesses and their employees in the exercise of free expression." Plaintiffs note the well-established principle that the loss of First Amendment freedoms, even for a minimal period of time, constitutes irreparable injury. *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Plaintiffs contend that the harm to them outweighs any harm to the City, which will only suffer the temporary inability to enforce the ordinances and Penal Code provision against them. Plaintiffs assert that a TRO would serve the public interest by preventing the enforcement of an ordinance that unconstitutionally restrains protected expression.

### B. Substantial Likelihood of Success/Irreparable Harm – Analysis

Plaintiffs' claims, framed in terms of the First Amendment, are that the improper enforcement of the City Ordinance (and the related state occupation tax provisions) and the Texas

Penal Code against the "donation centers" violates Plaintiffs' First Amendment rights because it restricts their ability to solicit charitable contributions through the donation centers. Though couched in terms of the First Amendment, the real issue on which the Plaintiffs seek a determination is whether the charity sweepstakes and donation centers violate city or state law – "Plaintiffs pray for a declaratory judgment declaring that their charity sweepstakes do not violate City, State or federal law."[7] At the TRO hearing, counsel for Plaintiffs conceded that, if the donation centers are in violation of the Texas Penal Code prohibition on use of gambling devices, then there is no First Amendment violation from the City's enforcement. Counsel for Plaintiffs also conceded that, if the machines are coin-operated machines subject to the city/state tax, then there would be no First Amendment violation from the City's enforcement. Thus, rather than raising a true First Amendment challenge to the ordinance or statute themselves, Plaintiffs seek a declaration that the donation centers are legal devices and are not subject to the city tax on coin-operated machines, both of which are purely state-law questions. Plaintiffs cloak these state-law claims within the First Amendment by arguing that, if improperly enforced against them, these ordinances restrict their charitable solicitation, which is protected speech.

It is beyond dispute that "charitable solicitations 'involve a variety of speech interests . . . that are within the protection of the First Amendment.'" *Riley v. National Federation of the Blind*, 487 U.S. 781 (1988) (quoting *Village of Schaumburg v. Citizens for a Better Environment*, 444 U.S. 620 (1980)). Plaintiffs rely on this fact for their claim that enforcement of the city ordinance and Texas Penal Code provisions against the donation centers, which results in the suppression of their charitable solicitation, is an unconstitutional violation of their First Amendment rights to free speech and assembly. However, this case is fundamentally different from the cases Plaintiffs rely on. Unlike *Schaumburg*, *Riley*, and *Secretary of State of Maryland v. Munson*, 467 U.S. 947 (1984), which involved facial challenges to laws purporting to directly regulate charities and charitable solicitation, the laws here do not purport to regulate speech, and Plaintiffs here challenge no portion

---

[7] *See* Plaintiffs' Complaint at ¶ 20. Though Plaintiffs' prayer requests a declaratory judgment that the sweepstakes do not violate federal law, Plaintiffs have not been accused of violating any federal law or threatened with an enforcement action or sanction under any federal law. Accordingly, any decision on that issue would appear to be wholly advisory.

of the ordinance or statute as unconstitutional.

This difference was recognized by the Seventh Circuit in *There to Care, Inc. v. Commissioner of Indiana Department of Revenue*, 19 F.3d 1165 (7th Cir. 1994), which involved charity bingo. The Seventh Circuit reasoned:

> [W]agering money is an activity-just as the business of leasing property is not speech and may be regulated by zoning laws and the like, even if the lessee wants to put on a play or open a newsstand. Gambling has traditionally been closely regulated or even forbidden, without anyone suspecting that these restrictions violate the first amendment.
>
> According to the complaint, TTC uses bingo games to spread the word about its activities. Posters on the walls proclaim its mission; during the games organizers recruit volunteers; net proceeds of the games support charitable endeavors that may include speech. But persons who seek to engage in speech cannot avoid the application of state laws that are neutral with regard to the content and viewpoint of their expression. The state may collect income taxes, which reduce the resources at the command of speakers, but laws indifferent to the content or even existence of speech pose no constitutional difficulties. Indiana does not distinguish between bingo parlors that have posters on the walls and those that do not; its statute regulates the process of wagering rather than expression that may accompany gambling.
>
> To put this in doctrinal terms:
>
>> A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others.... Government regulation of expressive activity is content neutral so long as it is "justified without reference to the content of the regulated speech."
>
> Indiana's regulation of gambling is unrelated to the content of any expression. It is justified without reference to that expression. . . ..
>
> Three opinions serve as the mainstays of TTC's case. In *Schaumberg v. Citizens for a Better Environment*; *Maryland v. Joseph H. Munson Co.*; and *Riley v. National Federation of the Blind of North Carolina, Inc*., the Court held that the first amendment places severe limits on states' ability to regulate charitable fundraising. Games of chance are effective in fundraising and so, according to TTC, are protected by the first amendment. On this understanding, TTC is entitled to run bingo games seven nights a week in the largest hall it can find. . . . What TTC fails to appreciate, however, is that the statutes at issue in *Schaumburg* and its successors were directed only against organizations engaged in expression. *Schaumberg* prohibited fundraising

8

> activities that did not return at least 75% of gross proceeds to the charities. But it did not forbid, say, the manufacture and sale of automobiles when the costs of the business exceeded 25% of the gross income. Because the regulation was targeted at organizations that were distinguished by their manner of expression, the governments could not avail themselves of the principle that regulation unrelated to expression is not doomed by incidental effects. In *Munson* the Court understood the law as "a direct restriction on the amount of money a charity can spend on fundraising activity" and therefore as "a direct restriction on protected First Amendment activity." The other two cases approached the subject in the same way. . . .
>
> Charities in Indiana have a protected market in gambling. Having barred commercial enterprises from this business, and thus created some monopoly rents for the plucking, the state did not violate the first amendment by setting limits on charities' endeavors. The statute is indifferent to the content and viewpoint of charities' expression; no more is required.

*Id.* at 1167-69 (citations omitted). Similarly, enforcement of the ordinance and statutes at issue here would not unconstitutionally burden Plaintiffs' First Amendment rights, even if enforcement has the incidental effect of suppressing their speech.

The difference here is that Plaintiffs argue that the ordinance and statutes do not apply. But Plaintiffs have not sufficiently demonstrated that this difference demonstrates the type of irreparable injury required or otherwise entitles them to injunctive relief. Though Plaintiffs cite to *Steffel v. Thompson*, 415 U.S. 452 (1974) for support, *Steffel* dealt with an as-applied challenge to a trespassing statute, and considered only the availability of declaratory relief, not injunctive relief. In *Steffel*, the claim was that the trespassing statute, which applied, could not be constitutionally applied to the plaintiffs' handbilling activity because that was an unconstitutional infringement on his First Amendment rights, and the Court held that pre-enforcement declaratory relief was available. Constitutional challenges to state statutes that infringe on First Amendment rights, both facially and as-applied, are the types of claims that can and usually should be adjudicated by federal courts. Requests to construe state statutes governing areas of state policy such as gambling and taxation that

are not alleged to be vague or overbroad or otherwise invalid, however, are more properly within the province of state courts and administrative agencies charged with their enforcement. Here, the only dispute involves construction of the city and state tax law and the penal code, provisions that do not purport to regulate speech – the question is whether the state laws apply, not whether they can be constitutionally applied.[8] Stated differently, the question presented is not whether Defendants' conduct violates the First Amendment, but whether the statute and ordinance apply to Plaintiffs' donation centers in the first instance.[9] While the end result of the City's enforcement is a suppression of protected speech, Plaintiffs are not truly asserting a First Amendment violation, but are simply arguing that their conduct is not prohibited by the statute or the ordinance. Thus, the Court is not convinced that Plaintiffs have shown a right to injunctive relief against the City's good-faith enforcement of valid state and city penal provisions that do not purport to regulate speech.

In their supplemental brief, Plaintiffs cite *Dombrowski v. Pfister*, 380 U.S. 479 (1965), as a basis for relief. In *Dombrowski*, the Supreme Court held that "the abstention doctrine is inappropriate for cases such as the present one where . . . statutes are justifiably attacked on their face as abridging free expression, or as applied for the purpose of discouraging protected activities." *Id.* at 489-90. Because Plaintiffs do not bring a facial challenge, they attempt to invoke the second basis for relief, contending that "threats of bringing criminal proceedings here are not made with any

---

[8] Plaintiffs' related argument of whether the city, as a home-rule city, can enforce the ordinance in contravention of the TABC's alleged position, is also a state-law question.

[9] In considering whether injunctive relief is available in Texas state court, courts have held that a claim that a machine is legal under the applicable statute is not a constitutional challenge. *See Cornyn v. Akin*, 50 S.W.3d 735 (Tex. App.–El Paso 2001, no pet.); *Letson v. Barnes*, 979 S.W.2d 414 (Tex. App.–Amarillo 1998, pet. denied)(holding that when a plaintiff simply wants court to interpret portions of gambling statute and declare that use of 8-liners does not constitute criminal activity thereunder, claim does not implicate constitutionality of the statute).

expectation to secure valid convictions, but to employ seizures, tickets and threats of arrest and prosecution to harass Plaintiffs and the businesses that place their donation centers and sweepstakes. The threats are being made to discourage the Plaintiffs from soliciting charitable donations in the alcoholic beverage establishments." These allegations, however, were not made in the original complaint or application for TRO, nor were they raised at the TRO hearing. Further, these allegations presuppose the validity of Plaintiffs' position on the only disputed issues in this case – whether the donations centers are coin-operated machines or gambling devices. In addition, Plaintiffs' allegations are conclusory, and absent evidence to the contrary, the court must presume that the Defendants' actions are good faith enforcement of the criminal provisions, and not with any intent to suppress Plaintiffs' charitable solicitation speech.[10] *See RTM Media, LLC v. City of Houston*, 584 F.3d 220, 229 (5th Cir. 2009) (holding that more than an allegation of bad faith is required and that the plaintiff must offer some proof). Thus, the Court finds that Plaintiffs have failed to demonstrate an entitlement to relief under *Dombrowski*.

To be entitled to a TRO, Plaintiffs must demonstrate a substantial likelihood of success on the merits. In this context, Plaintiffs must demonstrate a substantial likelihood that abstention principles will not preclude relief. *See Sierra Club v. City of San Antonio*, 112 F.3d 789 (5th Cir. 1997). In addition, they must demonstrate irreparable injury. The Court has not had adequate time to fully consider the issues, but finds at this point that Plaintiffs have not demonstrated an irreparable injury or that abstention principles do not apply. As the Court stated in *Cameron v. Johnson*, 390 U.S. 611, 618 (1968):

---

[10] The Court notes that it finds it highly improbable that SAPD is acting with an intent to suppress the Plaintiffs' requests for charitable donations rather than with a good-faith intent to enforce generally applicable penal laws.

> *Dombrowski* recognized the continuing validity of the maxim that a federal district court should be slow to act 'where its powers are invoked to interfere by injunction with threatened criminal prosecutions in a state court.' Federal interference with a State's good-faith administration of its criminal laws 'is peculiarly inconsistent with our federal framework' and a showing of 'special circumstances' beyond the injury incidental to every proceeding brought lawfully and in good faith is requisite to a finding of irreparable injury sufficient to justify the extraordinary remedy of an injunction.

Further, in similar cases, courts have found abstention to be required because the real issue was one of state law. *See, e.g.*, *Taylor v. Siegelman*, 230 F. Supp. 2d 1284 (N.D. Ala. 2002) (holding that the fact that resolution of the legality of the machines in state court would moot the constitutional claims before the court justified abstention); *Pomponio v. Fauquier County Bd. of Supervisors*, 21 F.3d 1319 (4th Cir. 1994); *Johnson v. Collins*, 199 F.3d 710 (4th Cir. 1999); *Koerner v. Garden District Association*, 78 Fed. App'x. 960 (5th Cir. 2003). *Cf Martin v. Stewart*, 499 F.3d 360 (4th Cir. 2007) (finding abstention inappropriate to a challenge to statute, but stating that "[t]his would be a different case if Martin had, in fact, sought a federal declaration that specific machines were lawful under South Carolina law").

In addition, given the fact that criminal proceedings are in progress concerning the very same machines that are the subject of this action, the Court questions whether injunctive relief would be appropriate. Though no proceeding has been instituted against Plaintiffs, the relief sought by Plaintiffs would directly impact ongoing criminal prosecutions. Plaintiffs have not adequately distinguished between the availability of declaratory versus injunctive relief in these circumstances, and to obtain a TRO, Plaintiffs must demonstrate the availability of injunctive relief on these facts. Further, the Tax Injunction Act and the principles underlying it counsel against this Court's ordering that certain taxes are not applicable. *See* 28 U.S.C. § 1341; *Alcan Aluminum Ltd. v. Dept. of*

*Revenue of Or.*, 724 F.2d 1294 (7th Cir. 1994) (holding that, even when the letter of the Tax Injunction Act does not apply, the principle of comity underlying it militates in favor of a stringent standard of justiciability in cases that threaten to interfere with state taxes).

In sum, the Court is greatly concerned with issuing injunctive relief in this case because there is no direct constitutional challenge to the validity of the ordinance and statute, which do not purport to regulate speech, but only state law questions of their application, and the injunction would interfere with state taxation in a highly regulated area requiring uniform application and with ongoing criminal prosecutions in the highly regulated and policy-driven area of gambling. Plaintiffs have not adequately demonstrated irreparable injury or that abstention is not required. Accordingly, the Court finds that Plaintiffs' application for a TRO must be denied.

## Conclusion

Plaintiff's Application for Temporary Restraining Order (docket no. 5) and Motion for Bond (docket no. 17) are DENIED.

The Court will set this matter for a hearing on Plaintiffs' application for a preliminary injunction, and all parties will be permitted to submit further briefing and argument on the propriety of injunctive relief and abstention.

SIGNED this 3rd day of May, 2010.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE